UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHENVISKY JAMES,                    )
                Petitioner,         )
                                    )          No. 4:01-cv-098
-v-                                 )
                                    )          HONORABLE PAUL L. MALONEY
KURT JONES,                         )
                Respondent.         )
_____)

## OPINION AND ORDER

### I.    Background

This case remains puzzlingly pending; and thus, the present motion is in a particularly peculiar procedural posture.

In June 2001, Petitioner Shenvisky James filed a petition under 28 U.S.C. § 2254, alleging a battery of claims. On July 28, 2004, after some time and several orders resolving a battery of motions, Magistrate Judge Ellen Carmody issued a report and recommendation, recommending that James' petition be stayed because he "failed to properly exhaust all of the [then remaining] claims asserted in his petition." (ECF No. 117 at *18.)

Understandably, James protested: since he had already filed one motion for relief from judgment (ECF No. 63 at A.119 ("Appendix G")), being sent to state court was, in his view, an exercise in futility and not legally required.

Nonetheless, Judge Richard Enslen, this Court's predecessor, overruled James' objections, and "directed" him to "comply with the *Palmer* procedures as more particularly described at pages 18 and 19 of the Report and Recommendation." (ECF No. 117 at *2.)

Thereafter, James continued filing motions, necessitating an order denying reconsideration and enjoining "further filings by Petitioner pending his compliance with the *Palmer* procedures as explained in the Report and Recommendation with the following exceptions: motions as to his ongoing appeal or other proper appeals; and a single motion for reconsideration concerning this Order and Injunction." (ECF No. 135 at PageID.83.)

Thereafter, James appealed to the Sixth Circuit. The Circuit observed that "[t]he magistrate judge recommended that the district court follow the stay procedure provided within this court's decision in *Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002), to permit James to elect to either abandon the unexhausted claims or have the matter stayed pending exhaustion of state-court remedies as to the unexhausted claims," and "the district court adopted the magistrate judge's report and recommendation." (ECF No. 147 at PageID.142.) But the Circuit did not (and could not) directly address the merits of that decision to stay proceedings, and his appeal was denied as to James' motion for bond and other ancillary motions. (*Id.* ("All pending motions are denied.")). His subsequent motion for reconsideration was also denied by Judge Enslen. (*See* ECF No. 145.)

After a denial of his petition for writ of certiorari was denied (ECF No. 150–51), James seemingly disappeared. And James' case dropped off the Court's radar in part because the action was (erroneously) administratively closed.

Nearly a decade later, James suddenly reappeared: on September 14, 2015, James filed a motion for relief from judgment in this Court. He included a copy of an order from state court showing he was correct all along: the order denied his motion for relief from judgment because, as James had previously argued, it was his second. (ECF No. 157.)

However, since he had neither filed an amended complaint nor sought to exhaust his remedies in state court in a timely fashion, i.e., "the *Palmer* procedures" (ECF No. 135 at PageID.83), the Magistrate Judge struck the instant motion because Judge Enslen's injunction had never lifted. (ECF No. 151; *see* ECF No. 135.)

Thus, James filed an appeal of that determination, which is the subject of this order. (*See* ECF Nos. 157, 161, 162.)

Despite Petitioner's delay in returning to this Court, it's clear that he should never have been exiled to state court in the first place. And because neither a final order dismissing this action nor judgment ever entered, Petitioner is entitled to proceed with his habeas claims.

## II.   Analysis

### A.   Procedural Posture of and Objections to the Motion.

Petitioner seeks relief from the Magistrate Judge's order under Fed. R. Civ. P. 72(a). Rule 72(a) allows a party to seek relief from a magistrate judge's order by filing objections in the district court where the case is assigned; the district court "must consider timely objections" to a nondispositive order, but typically may only "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A); *see also Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993).

However, that is not the appropriate standard of review for the order.

Per the express terms of Judge Enslen's injunction, Petitioner was not allowed to file a successive motion for reconsideration of the underlying order. (*See* ECF Nos. 135 at PageID.83, 145 at PageID.138–39.) The Magistrate Judge, thus, simply enforced an injunction that she was required to enforce at the time.

3

The Magistrate Judge's sua sponte docketing order enforcing a filing injunction by striking a motion is best understood as an order taken consistent with 28 U.S.C. § 636(b)(3) ("A magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.").[1]

With respect to § 636(b)(3), "[t]he [Federal Magistrates] Act's sponsors made it quite clear that the magistrate acts 'under the supervision of the district judges' . . . and that authority for making final decisions remains at all times with the district judge." *Mathews v. Weber*, 423 U.S. 261, 270 (1976) (quoting S. Rep. No. 371, at 12 (1967)); *see id.* (quoting *Hearings on the Federal Magistrates Act Before Subcomm. No. 4 of the H. Comm. on the Judiciary*, 90th Cong. 73 (1968) (testimony of Sen. Tydings)) ("[A] district judge would retain ultimate responsibility for decision making in every instance in which a magistrate might exercise additional duties jurisdiction.").

The injunction itself was a legally permissible exercise of authority. "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821); *accord. Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

---

[1] Moreover, because the motion sought reconsideration of Judge Enslen's prior order adopting a report and recommendation, the Magistrate Judge could have, at most, substantively addressed the motion for reconsideration of the order through a report and recommendation. *See, e.g., Parks By and Through Parks v. Collins*, 761 F.2d 1101, 1105–07 (5th Cir. 1985) (holding that a magistrate judge lacked authority to decide a Rule 60(b) motion to set aside a default judgment entered by a district judge absent consent of the parties and a referral by the district court); *Taylor v. Nat'l Group of Co.'s, Inc.*, 765 F. Supp. 411, 413–14 (N.D. Ohio 1990) ("It is simply not the case that a magistrate's jurisdiction is, by fiat, somehow merged with that of the district judge to an extent sufficient to vest the magistrate with the authority to reconsider and set aside or alter prior decisions of the district judge."). That would mean that the Court otherwise would have reviewed the underlying motion de novo.

Nonetheless, the Court must remain mindful that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. And in any event, "a district court ordinarily has the power to modify or rescind its orders," including injunctions, "at any point prior to final judgment in a civil case." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (citing *Marconi Wireless Telegraph Co. of America v. United States*, 320 U.S. 1, 47–48 (1943)); *see, e.g., F.T.C. v. British Oxygen Co.*, 437 F. Supp. 79, 83 n.8 (D. Del. 1977) (citing *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)) ("There is no doubt that the Court has the inherent power to modify or dissolve a[n] . . . injunction whose purpose has been fulfilled or as changing conduct or circumstances may require.").

After a full examination of Petitioner's motion, along with a full reexamination of this case and its tortured procedural history, the Court finds that the injunction dated November 10, 2004 should be dissolved because Petitioner should not have had to "compl[y] with the *Palmer* procedures" to begin with. (ECF No. 135 at PageID.83.) The Court will more fully detail the reasons for its conclusion in Part II.b.

In light of the Court's decision to dissolve the injunction, which is consistent with its inherent authority, *see Dietz*, 136 S. Ct. at 1892, the motion should not remain stricken on the docket, and the Magistrate Judge's order that simply enforced the injunction is no longer necessary or appropriate. Accordingly, Judge Enslen's injunction dated November 10, 2004 is hereby lifted. (ECF No. 135.) Petitioner's objection is sustained in part (ECF No. 162), and the Court orders the underlying motion to be reinstated to the docket.

The Court will now consider the merits of Petitioner's motion to determine whether an order of dismissal and judgment should now enter or the case should otherwise proceed.

### B.    Petitioner's Motion.

#### 1.    The motion is properly construed as a motion seeking reconsideration under the Local Rules and the Court's inherent authority.

First, the Court must address the procedural posture of this motion and case.

The underlying motion was brought under Fed. R. Civ. P. 60(b). However, "Rule 60(b) [is] limited to review of orders that are independently 'final decisions' under 28 U.S.C. § 1291." *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 773 F.2d 151, 154 (7th Cir. 1985); *see id.* ("The Advisory Committee's notes say that the Rule was devised to give the district court a power of revisitation it had lacked. A court always had the power to modify earlier orders in a pending case. Therefore 'final' in Rule 60(b) must modify 'order, or proceeding' as well as 'judgment.'").

Here, the Court's order and injunction, dated November 10, 2004, was almost certainly not a "final order" that could have been immediately appealed to the Court of Appeals because that order merely stayed proceedings pending James' compliance with the *Palmer* procedures. *See, e.g., Swanson v. DeSantis*, 606 F.3d 829, 832 (6th Cir. 2010) (concluding a state could not appeal the denial of a motion to stay proceedings so petitioner could exhaust claims under § 2254 in state court) ("Although some orders described as 'stays' may have the practical effect of an injunction and thus qualify for appeal under § 1292(a)(1), . . . stay orders that merely regulate the course of proceedings do not qualify . . . . 'An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1).'" (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279

(1989))); *see also* Charles Alan Wright & Arthur R. Miller, 15A Federal Practice & Procedure § 3914.13 (2d ed. 1992) ("Stays . . . used to regulate the court's own proceedings or to accommodate the needs of parallel proceedings . . . are no more appealable than other interlocutory procedural orders.").[2]

The Magistrate Judge's order striking the underlying motion pursuant to the 2004 injunction reflects a consistency with the puzzlingly pending nature of this case. (*See* ECF No. 161 at PageID.254 ("Petitioner's motion for relief . . . [is] stricken from the record and rejected pursuant to Judge Richard Alan Enslen's November 10, 2004 Order.").)

Thus, the Court will construe this motion as one that falls under W.D. Mich. LCivR 7.4 and the Court's inherent authority. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ."); *cf.* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

This distinction matters in part because, as the Court will now discuss, motions under Rule 60(b) must be filed in a "reasonable time,"[3] whereas motions for reconsideration do not have time limits because a final order or judgment has not yet entered.

---

[2] Federal Rule of Appellate Procedure 4(a), which has a 210-day outer time limit for an appeal, would not apply here because neither judgment *nor* the order dismissing for lack of exhaustion entered. *Compare Gillis v. United States*, 729 F.3d 641, 643 (6th Cir. 2013) (noting that in a case brought under § 2255, where an opinion and order denying the petition had issued but judgment had not, petitioner had 150 days under Fed. R. App. P. 4(a)(7) plus the standard 60 days in which to file an appeal).

[3] James would have been untimely with his motion as to Rule 60(b)(1) ("mistake, inadvertence, surprise, or excusable neglect") and (3) ("fraud") because he failed to file it within one year of the order; he further would have been untimely under Rule 60(b)(6) because a waiting a decade was unquestionably "unreasonable." *See* Fed. R. Civ. P. 60(c) ("A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.").

### 2.    The Court will consider the motion despite an extended delay.

Given James' decade-long delay, the Court could have perhaps dismissed this action for failure to prosecute under Federal Rule of Civil Procedure 41(b).[1]

However, neither the Court nor the State took any action during that time period either. The Court did not follow up with an order dismissing this action for lack of exhaustion, and the State did not seek an order of dismissal and judgment after James failed to follow the *Palmer* procedures in a timely manner. Thus, the Court will decline to sua sponte dismiss the motion and case at this point. This is the appropriate exercise of this Court's discretion for a few reasons: 1) there is no per se time-bar to Petitioner's motion; 2) this constitutional action seeks relief under the Great Writ; 3) petitioner is proceeding pro se and he was still pursuing his rights in what he believed to be a necessary (and time-consuming) manner; and 4) Petitioner's argument for reconsideration is meritorious.

First, a motion for reconsideration requires separate analysis from a Rule 60(b) motion. *See In re Greektown Holdings, LLC*, 728 F.3d 567 (6th Cir. 2013) (noting that "[w]hen a party files a motion for reconsideration pursuant to . . . [a] local rule, we review the district court's ruling on the motion using the standard set forth in the local rule"). In addition, "a district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case." *Dietz*, 136 S. Ct. at 1892.

---

[1] "It is well settled that a district court has the authority to dismiss sua sponte a lawsuit for failure to prosecute." *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013). Courts must consider four factors when considering dismissal for failure to prosecute: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action." *Id.* (citing *Mulbah v. Detroit Bd. of Educ.*, 262 F.3d 586, 589 (6th Cir. 2001)).

Neither Local Rule 7.4 nor any limits to the Court's inherent authority provide a time-bar to Petitioner's motion. And because neither an order dismissing this action for lack of exhaustion nor judgment entered, the traditional "balance" between "the interest in justice with the interest in protecting the finality of judgments" does not apply. *Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004) (discussing the appropriate standard for reconsideration of final orders and judgments under Rule 60(b)); *see supra* note 2.

Second, the Court must keep in mind that "[t]he purpose of the writ of habeas corpus ad subjiciendum (sometimes called The Great Writ) is to inquire as to the legality of the prisoner's restraint." *Carbo v. United States*, 277 F.2d 433, 435 (9th Cir. 1960). Decades ago, the Supreme Court affirmed the importance of hearing a prisoner's petition:

> We do well to bear in mind the extraordinary prestige of the Great Writ, habeas corpus ad subjiciendum, in Anglo-American jurisprudence: "the most celebrated writ in the English law." 3 Blackstone Commentaries 129. It is "a writ antecedent to statute, and throwing its root deep into the genius of our common law. It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement. It is of immemorial antiquity, an instance of its use occurring in the thirty-third year of Edward I." *Secretary of State for Home Affairs v. O'Brien*, (1923) A.C. 603, 609 (H.L.). Received into our own law in the colonial period, given explicit recognition in the Federal Constitution, Art. I, § 9, cl. 2, incorporated in the first grant of federal court jurisdiction, Act of September 24, 1789, 1 Stat. 81—82, habeas corpus was early confirmed by Chief Justice John Marshall to be a "great constitutional privilege." *Ex parte Bollman and Swartwout*, 4 Cranch 75, 95 (1807). Only two Terms ago this Court had occasion to reaffirm the high place of the writ in our jurisprudence: 'We repeat what has been so truly said of the federal writ: 'there is no higher duty than to maintain it unimpaired,' *Bowen v. Johnston*, 306 U.S. 19, 26 (1939) . . . .

*Fay v. Noia*, 372 U.S. 391, 399–400 (1963), *overruled in part by Wainwright v. Sykes*, 433 U.S. 72 (1977).

The Court expresses no opinion on the possible procedural default or merits of his claims, but if any claim is meritorious, Petitioner would suffer a grave constitutional wrong by an unwarranted delay and dismissal without a federal court ever considering his claims.

Third, Petitioner is proceeding pro se, which warrants additional caution. *See, e.g., Streeter v. N.L.R.B.*, 835 F.2d 879, at *1 (6th Cir. 1987) (table) (citing *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986)) ("Dismissal for failure to prosecute is a harsh sanction . . . . Dismissal of pro se lawsuits is justified only when the pro se plaintiff acts deliberately, not when he does so through misunderstanding.").

In this case, as the Court will more fully discuss in Part II.B.3, Petitioner knew he had already filed one motion for relief from judgment. Thus, in his view, he had to go on a "10–11 year journey" to find "newly discovered evidence"—one of two narrow exceptions that allows Michigan courts to consider a second motion for relief from judgment. While Petitioner's delay was perhaps unreasonable—because he could have at least *attempted* to file a second motion in state court in a timely fashion—so too was the Court's and the State's actions in failing to dispose of the case. And since the State's exhaustion argument and the Court's decision were also unreasonable, it's difficult to fault only a pro se Petitioner here.[5]

In that vein, and finally, the strongest reason to consider this motion now despite a long delay is simply this: Petitioner was correct all along; he should never have been required to follow *Palmer* procedures.

---

[5] In addition, since neither a final order nor judgment entered, *see supra* note 3, Petitioner would have had the opportunity to appeal *now* had the Court dismissed for lack of prosecution. Since Petitioner never had the opportunity to raise the issue of whether the *Palmer* procedures were required in the first place, it's possible that the Sixth Circuit would have reversed the Court's judgment on that issue and remanded for further proceedings because Petitioner should not have been required to attempt further exhaustion.

### 3.    The standard for reconsideration has been met.

Under Local Civil Rule 7.4(a), the party moving for reconsideration bears a heavy burden to "not only demonstrate a palpable defect by which the Court and the parties have been misled, but also show that a different disposition of the case *must* result from a correction thereof." W.D. Mich. LCivR 7.4(a) (emphasis added). However, in exceptional circumstances, the Court also retains inherent authority to reconsider its prior orders on its own initiative without the need to resort to such an exacting standard. *See Dietz*, 136 S. Ct. at 1892.

The original Report and Recommendation, as fully adopted by Judge Enslen—which is the subject of James' motion—instructed Petitioner to follow the *Palmer* procedures:

> I recommend that within 30 days of the order of the district court resolving any objections to this Report and Recommendation, Petitioner must either (a) file an amended petition containing only the exhausted claim or (b) return to state court to exhaust his administrative remedies as to his unexhausted claims. I also recommend that if Petitioner returns to state court within 30 days, he must file with this court within 45 days of the order of the district court (referred to immediately above) an affidavit setting forth the date on which he filed a motion for relief from judgment in the state court and the claims raised in that motion. If Petitioner fails either to amend his petition or to file the affidavit concerning the filing of his state-court motion, I recommend that his petition be dismissed for lack of exhaustion. Upon receipt of Petitioner's affidavit, I recommend that this Court stay this matter and administratively close this case until Petitioner properly exhausts his state-court remedies. Once Petitioner has exhausted his state-court remedies, I recommend that he be required to file an amended petition adding his newly exhausted claims with this court within 30 days of final decision by the Michigan Supreme Court.

(ECF No. 105 at *17, *adopted by* ECF No. 135.) However, the very basis in the Report and Recommendation for requiring Petitioner to follow these *Palmer* procedures constitutes a "palpable defect by which the Court . . . [was] misled":

11

Petitioner has at least one available procedure by which to raise the unexhausted issues he has presented in this application. He may file a motion for relief from judgment under M.C.R. 6.500 *et seq.* Under Michigan law, one such motion may be filed after August 1, 1995. M.C.R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion. Therefore, I conclude that he has at least one available state remedy.

(*Id.* at *16, *adopted by* ECF No. 135.)

At the time the Report and Recommendation entered, Petitioner had already submitted a copy of an order denying his first motion for relief from judgment. (*See* ECF No. 63 at A.116 ("Appendix G").) That document was apparently overlooked.

In addition, after Petitioner finally went back to state court, his contention that he had already filed a motion for relief from judgment (and thus relief was not available in state court) was validated because a state judge denied Petitioner relief because the motion was his second seeking relief from judgment. (*See* ECF No. 157-13 at PageID.240 ("Thus, absent a showing of a retroactive change in the law that occurred after the first motion or a claim of newly discovered evidence, Defendant's averments are doubly barred . . . .").)

The Sixth Circuit has recently affirmed that "Michigan law does not allow the filing of second motions for post-conviction relief, with two exceptions not applicable [here]":

Michigan law, instead of imposing a time limit on successive motions, flatly forbids them, unless they fall within two narrow exceptions: motions based on (1) "a retroactive change in law that occurred after the first motion for relief from judgment," or (2) "a claim of new evidence that was not discovered before the first such motion." M.C.R. 6.502(G)(2). Because impermissible successive motions cannot be filed, they cannot be "accepted" by the state court and thus are not "properly filed" for tolling purposes under § 2244(d)(2).

*Williams v. Birkett*, 670 F.3d 729, 733 (6th Cir. 2012). The Court reasoned that "M.C.R. 6.502(G)(1) is 'a condition to filing, as opposed to a condition on obtaining relief,' because

like the timeliness rule in *Pace*, Michigan's rule against successive motions prevents a second petition from even being considered by the court." *Id.* (quoting *Artuz v. Bennett*, 531 U.S. 4, 11 (2000) and citing *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005)).

For the same reason that filing a second motion for relief from judgment does not toll AEDPA's one-year time limitation, a petitioner should not be forced to follow the *Palmer* procedures when he has already filed one motion for relief from judgment—unless the claims involve one of the two permissible exceptions under M.C.R. 6.502(G)(2). *See, e.g., Birkett*, 670 F.3d at 730; *Ambrose v. Romanowski*, 621 F. App'x 808, 815 (6th Cir. 2015) ("Because [the petitioner] failed to properly exhaust his current argument in state court, and he no longer has a state-court remedy available since he has already filed a motion for relief from judgment under Mich. Ct. R. 6.502(G)(1), his claim is procedurally defaulted."); *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005) (advising district courts that "stay and abeyance should be available only in limited circumstances"—"when the district court determines that there was good cause for the petitioner's failure to exhaust his claims first in state court" and determines his claims are not "plainly meritless"). If a petitioner cannot even obtain equitable tolling by filing a second motion for relief from judgment, *see* Birkett, 670 F.3d at 730, how can a court tell him to do just that to attempt exhaustion on the merits?[6]

The Court's prior conclusion that "petitioner has not yet filed his one allotted motion [for relief from judgment]" (ECF No. 105 at *16) was unquestionably a "palpable defect by

---

[6] The Court appreciates that its predecessor and the Magistrate Judge did not have the benefit of *Birkett*, *Pace*, and *Rhines* in 2004, where the state of the law may have been unsettled in light of arguably contradictory language in the Michigan Court Rules. *Compare* M.C.R. 6.502(G)(1) *with* 6.508(D) (discussing the "failure to raise such grounds [for relief] on appeal or *in the prior motion*" (emphasis added)). But the Sixth Circuit has since clarified M.C.R. 6.502(G). *See, e.g., Birkett*, 670 F.3d at 730; *Romanowski*, 621 F. App'x at 815;

which the Court . . . [was] misled." (*Compared id. with* ECF No. 63 at A.116 ("Appendix G")). Thus, forcing Petitioner to go to state court to "exhaust" claims was legally erroneous.

Because at least some of these claims need to be examined—as opposed to dismissed for lack of exhaustion—a "different disposition," at least in one sense, "must result" from the Court's prior "palpable defect." Thus, the Court grants Petitioner's plea for reconsideration.

With all of that said, the Court does not express any opinion as to whether some of Petitioner's claims are *procedurally defaulted* (as opposed to *not exhausted*). *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *accord. Cone v. Bell*, 243 F.3d 961, 967 (6th Cir. 2001) ("If the claims presented in the federal court were never actually presented in the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted, but are procedurally barred."); *see also, e.g., Bechtol v. Pelesnik*, 568 F. App'x 441, 447 (6th Cir. 2014) (finding that claims were procedurally defaulted under similar circumstances).

The State may make an argument sounding in procedural default, but not exhaustion, from this point forward for appropriate claims. *See Bell*, 243 F.3d at 967. *But cf. Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016) (noting a petitioner may "avoid procedural default only by showing that there was cause for the default and prejudice resulting from the default, or that miscarriage of justice will result from enforcing the procedural default in the petitioner's case").

The Magistrate Judge will then need to evaluate, with a fresh examination of the case file, which claims are procedurally defaulted and which claims can properly be considered on the merits.

## ORDER

Accordingly, for the reasons stated in the accompanying opinion, the Court hereby

**ORDERS** the following:

1) the Clerk of Court shall administratively reopen this case;
2) the injunction issued on November 10, 2004 is hereby **LIFTED** (ECF No. 118);
3) Petitioner's objection to the Magistrate Judge's order striking his motion is **SUSTAINED IN PART**, and the Clerk of Court shall reinstate Petitioner's motion to the docket (ECF No. 157);
4) Petitioner's motion for reconsideration is **GRANTED** (ECF No. 157);
5) the prior order dated September 20, 2004 is hereby **VACATED** (ECF No. 117), the Magistrate Judge's Report and Recommendation is **REJECTED** (ECF No. 105), and the petition is remanded back for a new report and recommendation;
6) the State must file an amended answer to the petition no later than thirty days from the entry of this order; and
7) the petition is hereby referred anew to the Magistrate Judge for a new Report and Recommendation, and this matter shall assume precedence, to a reasonable degree, over other pending matters in light of the long, unjustified delay Petitioner has faced.

**IT IS SO ORDERED.**

Date:   March 10, 2017           /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge

15